HEINZE *v.* HEINZE.

1. LANDLORD AND TENANT—LIFE ESTATES—GRANTOR AS LESSEE—
   CONSENT OF GRANTOR—VALIDITY OF LEASE.

   Where a son executed a life lease to his mother of land
   willed to him by his father, after his father's death, with
   the condition that she should not sublet without his con-
   sent, it cannot be contended that a lease back to him
   required his consent in writing.

2. SAME—VALIDITY OF LEASE—RIGHT TO POSSESSION.

   Where, previous to the execution of the life lease, the son
   had possession, but was not living upon the premises,
   if he recognized his mother's rights under it, his pos-
   session thereafter would emanate from her and be sub-
   ordinate to her rights to the same extent as though they
   had gone through the idle ceremony of some physical
   delivery and redelivery of possession.

3. SAME—LIFE LEASE—RIGHT OF POSSESSION.

   The trial court was not in error in charging the jury that
   the mother, under the life lease, which was duly executed,
   had a right to the possession and use of the premises.

4. SAME—ATTORNMENT—INSTRUCTIONS—QUESTION OF FACT — BUR-
   DEN OF PROOF.

   The court also correctly instructed the jury that whether
   she asserted this right, and had an understanding or con-
   tract with the son whereby he recognized her right and
   agreed to attorn to her as a tenant, was a question of
   fact; and that unless there was an agreement by which
   he rented of her, he was not liable, in an action for the
   rent by the executor of her estate; the burden of proof
   being upon plaintiff.

5. SAME—WEIGHT OF EVIDENCE—TRIAL—QUESTION FOR JURY—MIS-
   CARRIAGE OF JUSTICE.

   Where the evidence, which was in irreconcilable conflict,
   was sufficient to present an issue of fact for the jury as
   to whether defendant recognized his tenancy and agreed
   to pay rent, the question being one peculiarly within the
   province of the jury, the judgment for plaintiff is not so
   against the great weight of evidence as to require reversal;
   nor can it be said that it affirmatively appears there has
   been a miscarriage of justice.

Error to Clinton; Searl, J. Submitted October 9, 1916. (Docket No. 89.) Decided March 30, 1917.

Assumpsit by William Heinze, executor of the estate of Margaret Heinze, deceased, against Ernest J. Heinze on certain promissory notes and for the recovery of rent due said estate. Judgment for plaintiff. Defendant brings error. Affirmed.

*George P. Stone* and *William M. Smith*, for appellant.

*A. L. Chandler* and *E. F. Wilson*, for appellee.

STEERE, J. The parties to this action are brothers. Plaintiff, as administrator of their mother's estate, sued to recover from defendant an alleged indebtedness to said estate on certain promissory notes, for the value of some household goods claimed to belong to the estate and for the rent of certain real estate during several years, with interest, the items claimed due and owing the estate by defendant, according to plaintiff's bill of particulars filed under a declaration upon the common counts in assumpsit, aggregating $4,176.22.

The case was tried by a jury in the circuit court of Clinton county. As the issues developed under the testimony introduced, certain items in plaintiff's bill of particulars were withdrawn by his counsel, and the court finally withdrew from consideration of the jury all questions except whether there was any rent owing on a 40 acres concededly rented by defendant from his mother, and as to a claimed agreement to pay rent for the use of a certain other 40 of an 80 acres on which she had a life lease, and its rental value. The jury rendered a verdict in favor of plaintiff "for $2 per acre per year for the back 40 of the 80-acre tract for six years, making a total of $480."

A motion was made requesting that this verdict be set aside on various grounds, amongst which it was urged and claimed that the same was contrary to the undisputed testimony, against the great weight of evidence, and a verdict should have been directed for defendant. In a written opinion upon this motion the trial court reached the conclusion that defendant's contentions were "partly right and partly wrong," and that there was evidence in the case raising an issue for the jury as to whether there was a contract, understanding, or arrangement between defendant and his mother that he should pay rent for the land, but, after a careful review of the testimony, determined there was no evidence showing an "understanding that defendant was to pay rent back as far as six years" before her death, held that the evidence would not warrant a verdict for more than half the amount awarded, and entered an order *nisi* granting a new trial unless plaintiff remitted accordingly, in which case the motion should stand denied. Thereupon plaintiff elected to file such remittitur, and judgment was entered on the verdict in his favor for $240.

Ernest Heinze, Sr., an elderly man, died in June, 1907, leaving a widow, · Margaret Heinze, and seven children, two of whom are plaintiff and defendant. At the time of his death he owned an 80-acre farm in Clinton county· upon which he resided and an 80 acres in section 25, Elba township, Gratiot county. He also owned jointly with his wife, as tenants by entirety, an 80 acres in section 26 of the same township, the two 80's separated only by an intervening highway. He left a will which, so far as material here, gave the 80-acre homestead in Clinton county to a then unmarried son named Gustave, who was living at home with his parents, subject to a life estate to his widow, Margaret, and the 80 acres which he owned in section 25, Elba township, to his son Ernest, the

defendant, who was married, and over two years previous to his father's death had been given possession and use of this 80 with the understanding it was, or would be, his. There was a small house upon this property, but he resided with his wife in a house across the highway located on the 80 acres in section 26 which his father and mother owned together, and which by right of survivorship became hers absolutely when her husband died. He continued to occupy this dwelling until 1910, when he moved into a house which he had built upon the land which his father had left him.

After the father died an unsigned, but fully prepared, life lease of the 80 acres in section 25 was found amongst his papers, running from defendant Ernest J. Heinze to his mother, Margaret Heinze. The expressed consideration was $1, and by its provisions the grantor obligated himself to pay the taxes upon the leased premises. When her husband's will was presented to the probate court Margaret Heinze also sent this life lease for defendant to sign, which he did before his father's estate was finally settled and distributed; the executed lease being returned to his mother and kept by her until she died, in December, 1914.

There was evidence as to buildings upon, and defendant's use of and plans for making his home upon, the front 40 of the 80 acres, from which the court found it to be a homestead, and, the grantor's wife not having joined in the life lease, the jury was instructed that only the back 40 could be taken into consideration in passing upon the issues submitted to them.

During the remainder of his mother's life defendant had possession of and farmed the 80 acres left to him, paying the taxes thereon, and during much of the time also rented of his mother 40 acres of her land across

the highway, where he continued to live until 1910, when he moved into a house which he had built upon his own land.

Following her husband's death Mrs. Heinze remained on their old homestead for two or three years with her son Gustave, until he married, after which she lived at different places for varying periods with certain of her married children, and for a time upon her own place on section 26. It is indicated that her migrations were the result of dissatisfaction with environments where she happened to be staying at the time, or of disagreements and unfriendly feeling between her children by which she was influenced to leave one home and go to another. She apparently was in the full possession of her faculties, and in a way looked after her limited business affairs, keeping, or attempting to keep, some record of them in a little book, in which she made entries from time to time. This was admitted in evidence, excluding self-serving comments bearing on her legal rights.

The theory and claim of plaintiff is that defendant signed the life lease to his mother understandingly while his father's estate was in process of settlement, and she could elect to take under the will or statute; that he knew his father's intentions and purpose in preparing the lease, and in pursuance of such purpose, it was understood and agreed between him and his mother that he should retain possession of the land which his father intended him to have subject to that burden and attorn to her as tenant during the few remaining years of her life; that his denial of liability is an afterthought arising from family dissensions and anger over her going to reside with certain of her children with whom he was at enmity.

It is contended by him and in his behalf that he simply signed the life lease as a matter of form because his mother desired it to satisfy her other chil-

dren; that there was never any agreement or intention he should pay her rent, but, on the contrary, it was stated by her and fully understood between them that he should not; that the lease, which provided the lessee should keep the premises in repair and not sublet the same without the consent of the lessor, contained important obligations on her part, and, as she did not take possession of the premises or sign the lease, it did not become a binding or enforceable instrument between the parties.

It is undisputed she took the lease and kept it, and plaintiff's testimony shows that she demanded rent of defendant for the property it covered. If she sublet this property to her grantor, it could scarcely be claimed essential to such transaction that she procure his consent in writing; and if, as claimed by plaintiff, defendant did recognize her rights under the lease, and in fact agreed to retain possession of the premises as her subtenant, paying her rent therefor, his thereafter possession would emanate from her and be subordinate to her rights to the same intent and extent as though they had gone through the idle ceremony of some physical delivery and redelivery of possession. He was not then living upon the property, and up to the time of his father's death was apparently but a gratuitous tenant at will. This instrument was executed by defendant in the presence of two witnesses, acknowledged by him before the judge of probate, and duly recorded in the office of the register of deeds.

We think the trial court committed no error in charging the jury that the mother had a right under this instrument to possession and use of the back 40 described in it, that whether she saw fit to assert that right, and had an understanding or contract with defendant by which he recognized her right and agreed to attorn to her as a tenant for the use of the land was a question of fact, but, if she did not assert her

right and saw fit not to put him off or rent it to him, simply permitting him to remain in possession of it —if there never was any agreement by which he rented it of her—plaintiff could not recover, and that the burden of proof rested upon plaintiff to establish a tenancy and agreement to pay rent by a preponderance of the evidence.

This contention, as we view it, is in its essential features primarily one of facts arising out of an irreconcilable conflict in the testimony of the members of this family. Defendant's most meritorious assignments of error relate to whether there was any, or sufficient, evidence to support the reduced verdict upon the issue as finally submitted to the jury. It is particularly urged that the record is void of proof that defendant recognized a tenancy under the lease. Of the circumstances under which he signed the lease, a brother testified, amongst other things:

"Judge Merrill spoke to Ernest and asked him whether he knew about the lease, and Ernest said he did, he knew all about it. Judge Merrill asked him to sign it, and he said he would and he signed it. * * * Judge Merrill told him, 'This lease means rent,' and now he says to Ernest, 'Now, go to your mother and fix up some price and pay her.' * * * He just nodded his head like and didn't say any more."

Of a subsequent interview, after dissensions had developed and defendant was residing on his front forty, this witness further testified:

"Mother says to him, 'I want my rent on that 80 acres you are living on,' and he says, 'I won't pay you a G—— d——n cent as long as you are living with Charley.' * * * He just came from my place, and then was when he forbid her living there, * * * and says, 'If you don't get her out of there, I will send both of you to Ithaca.'"

Touching another interview, a sister-in-law of defendant testified in part:

"Ernest asked her, told her that he had a chance to sell this 80-acre farm and asked her to sign off the life lease. * * * She told him she would not do it; she told him she wanted her rent. He told her he didn't have no money to pay rent. * * *"

A niece who was present testified:

"He said he had a buyer for the 80 acres, * * * and he wanted her to sign off and she told him 'No,' she would not sign off until he brought the buyer. Then he asked her to sign off again, and she says, 'I want my rights.' He asked her what she meant by rights. She says, 'My rent.' * * * And he says, 'You will get it; I will see that you get it'; but he wanted her to sign off, and she said, 'No; you bring your buyer, and then I will talk with you.' * * * He said that he would see that she got her rent; he would see that she got it if she signed off."

We think these fragmentary excerpts from the testimony contain evidential support of an understanding or agreement that defendant should be holden to his mother for the use of the premises sufficient to make that question an issue for the jury, as the trial court found. Any attempt to review and analyze the conflicting and bitter testimony of the opposing witnesses in all its phases would serve no beneficial purpose. The credibility of those witnesses under the circumstances shown was peculiarly within the province of the jury, and we are not able to say from this record that the verdict, reduced to the amount for which judgment was entered, is so against the great weight of evidence as to demand reversal, or to conclude from an examination of the entire record that it affirmatively appears the errors complained of have resulted in a miscarriage of justice.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. PERSON, J., did not sit.